UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:24-cv-00344

———

**Ronald Orr,**
*Plaintiff,*

v.

**City of Tyler, Texas,**
*Defendant.*

———

**O R D E R**

Plaintiff sued defendant for alleged violations of the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), and the Texas Labor Code. Doc. 1 at 5–7. The case was referred to a magistrate judge. Doc. 17. Defendant moved for summary judgment. Doc. 20. The magistrate judge issued a report recommending that the court grant that motion. Doc. 32 at 32. Plaintiff timely filed written objections.[1] Doc. 36.

The court reviews the objected-to portions of a magistrate judge's report and recommendation de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "objections must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. Unit B 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Furthermore, a party's entitlement to de novo review does not entitle it to raise arguments that were not presented to the magistrate judge without a compelling reason. *See Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir. 1994). When there have been no timely objections to a report, or the objections are improper, "the

---

[1] Plaintiff initially filed 13 pages of objections on February 17, 2026, the objection deadline. Doc. 34. That same day, the magistrate judge struck plaintiff's objections as noncompliant with the eight-page limit in Local Rule CV-72(c) and instructed plaintiff to re-file compliant objections within five days. Doc. 35. Plaintiff refiled his objections on February 19, 2026. Doc. 36.

- 1 -

court need only satisfy itself that there is no clear error on the face of the record." Fed. R. Civ. P. 72(b), advisory committee's notes to 1983 amendment.

### I.   Objection No. 1

Plaintiff first objects to the report's finding that plaintiff was not a "qualified individual." Doc. 36 at 1. Specifically, he argues that the report failed to apply the proper legal standard for identifying a job's essential functions. *Id.* Plaintiff also argues that the record contains evidence that he could perform his job with accommodations. *Id.* at 3–4.

#### A.   Essential functions

The ADA defines a qualified individual as someone "who, with or without reasonable accommodation, can perform the essential functions of" a job. 42 U.S.C. § 12111(8). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* "Essential functions" means a position's "fundamental job duties" but "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "Evidence of whether a particular function is essential includes, but is not limited to," the "time spent on the job performing the function" and the "consequences of not requiring the incumbent to perform the function." *Id.* § 1630.2(n)(3)(iii)–(iv). "The text of the ADA and its regulations require [courts] to give greatest weight to the employer's judgment factor, though [courts] must evaluate the employer's words alongside its policies and practices." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 325 (5th Cir. 2021) (cleaned up).

Applying this standard, the report explained that defendant's description of plaintiff's position "lists the essential functions of the position to include mowing and other groundskeeping; emergency response; lifting, carrying, pushing, and pulling up to 50 pounds for up to 2 hours daily; and other duties as assigned." Doc.

32 at 13. The report further explained that plaintiff "acknowledges" that the description states his "main responsibilities" but concluded that plaintiff established a genuine issue of material fact "as to whether groundskeeping and operating a zero-turn mower and jackhammer" are essential functions. *Id.* at 13–14. Nonetheless, the report concluded that the position included functions that plaintiff *agreed* were essential. *Id.* at 14.

Plaintiff objects that what he actually did was different from the job description. Doc. 36 at 3. He further contends that he performed his assigned work without incident. *Id.* Those arguments do not show that the report incorrectly articulated the standard for determining which job functions were essential. Nor do they show that the report erred in relying upon plaintiff's own admissions about what functions were his main responsibilities or essential to his job. Indeed, in his opposition brief, plaintiff concedes that "his main responsibilities were to maintain the airport equipment along with the other duties listed in his job description." Doc. 21 at 3. Of the functions the City deems essential, plaintiff produced contrary evidence regarding only two: groundskeeping and using a jackhammer. *See id.* at 3, 12, 19. Moreover, although plaintiff claims that he performed his *assigned* work without incident, he concedes that defendant attempted to only assign him work within his restrictions. *Id.* at 4–6. He also concedes that the record contains evidence that such attempts caused problems for other employees and triggered complaints. *Id.* at 7.

Plaintiff therefore identifies no error in the report's articulation or application of the proper legal standard for determining a job's essential functions. In addition, despite Dr. Blue's report and plaintiff's limitations, plaintiff does not explain how either factors into the essential-function analysis. *See* Doc. 36 at 3. Thus, the report's essential-function analysis supports the conclusion that "emergency response and lifting, carrying, pushing, and pulling up to 50 pounds for up to 2 hours daily are essential functions of" plaintiff's former position. Doc. 32 at 14.

### B. Evidence of performance with accommodations

Plaintiff also objects that he could perform his job with accommodations. Doc. 36 at 3–4. He argues that the report erroneously accepted that accommodations would omit essential functions and that the report impermissibly construes evidence against him. *Id.* at 4. In support of this argument, he points to post-termination work history and his physician's report. *Id.*

Reasonable accommodations include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held . . . is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii). However, reassigning essential functions to another employee or requiring another employee "to substitute for the portions of the job that the disabled individual cannot perform" are not reasonable accommodations. *Heffern v. Willis-Knighton Med. Ctr.*, 129 F.3d 607, 1997 WL 680830, at *4 (5th Cir. 1997) (per curiam) (unpublished table decision); *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999). Put another way, "[t]he ADA does not require an employer 'to reallocate essential functions' to accommodate an employee with a disability." *Credeur v. La. ex rel. Off. of Att'y Gen.*, 860 F.3d 785, 795 (5th Cir. 2017) (quoting 29 C.F.R. § 1630, app. at 399). At the summary-judgment stage, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam).

As an initial matter, plaintiff's post-termination employment history is irrelevant to whether plaintiff was a qualified individual. *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) ("[T]he question is whether he was qualified *at the time* of his termination." (emphasis added)); *Gonzalez v. United Parcel Serv., Inc.*, No. 5:15-cv-00986, 2018 WL 4699274, at *10 (W.D. Tex. Sep. 28, 2018) ("The question here is not whether

Gonzalez was *ever* qualified for his position . . ."), *aff'd* 777 F. App'x 735, 736, 738 (5th Cir. 2019) (per curiam) (unpublished) (disregarding post-termination medical treatment as "not alter[ing] whether [the plaintiff] was qualified for the job at the time of his termination" (cleaned up)). Thus, the report properly disregarded that evidence.

The report also did not err in its treatment of other evidence regarding plaintiff's requested accommodations. Plaintiff requested his physician's recommended accommodations, which would limit plaintiff "to activities that did not require heavy lifting, carrying, pushing, or pulling with his right arm or strenuous or continuous use of the right arm." Doc. 32 at 15. Plaintiff further proposed that he could seek help from another employee if he encountered a job he could not do alone. *Id.* Plaintiff does not show that any of those findings are incorrect. Moreover, as noted above, the essential functions of plaintiff's job included "emergency response and lifting, carrying, pushing, and pulling up to 50 pounds for up to 2 hours daily." *Id.* at 14. Based on those findings, the report concluded that plaintiff's proposed accommodations were not reasonable accommodations as a matter of law. *Id.* at 15–17.

In addition, the fact that defendant gave plaintiff accommodations that the ADA does not require does not mean that defendant must continue to give those accommodations. *See, e.g.*, *Harmon v. Collier*, 158 F.4th 595, 612 (5th Cir. 2025) (discussing cases involving individualized accommodations); *Wilburn v. Lucent Techs., Inc.*, No. 3:98-cv-002581, 2000 WL 1772670, at *5 (N.D. Tex. Nov. 30, 2000). That is especially true when the accommodations reallocate or relieve an employee of essential functions. *Burch*, 174 F.3d at 621; *Credeur*, 860 F.3d at 795. Thus, considering the report's finding that plaintiff's proposed accommodations were unreasonable, the report did not err in supporting the above proposition by citing *Magnant v. Panelmatic Texas, Inc.*, No. 4:05-cv-00135, 2006 WL 2434475 (S.D. Tex. Aug. 22, 2006). *Contra* Doc. 36 at 4.

Plaintiff also contends that the report effectively created a requirement for a disabled individual to be "100% healed." Doc. 36 at 4. Considering the foregoing, the court is unpersuaded that the report created such a requirement. Therefore, the court is also unpersuaded that the report wrongly concluded that plaintiff failed to identify a reasonable accommodation. *See* Doc. 32 at 17. Thus, plaintiff's first objection is overruled.

## II.  Objection No. 2

Plaintiff's second objection is that the report improperly resolved the credibility and weight of plaintiff's physician's opinion by accepting defendant's direct-threat defense. Doc. 36 at 5. This objection, however, ignores the report's findings as to that defense. In his response brief, plaintiff made no arguments about his physician's credibility or the weight of the physician's opinion when responding to defendant's direct-threat defense. *See* Doc. 21 at 27–28 (arguing only that the record shows that any direct threat "could be eliminated through accommodation"). The report concluded that the only issue in dispute regarding the defense was whether the physician's suggested accommodations were reasonable. Doc. 36 at 19–20. As explained above, they were not. Thus, plaintiff's second objection is overruled.

## III. Objection No. 3

Plaintiff's third objection is that the record contains no evidence that his requested accommodations would have created an undue hardship. Doc. 36 at 6. He also objects that "Steen requested Jentes draft the 'undue hardship' email without providing ADA regulatory standards" and that no evidence exists "that Jentes had any experience regarding the ADA." *Id.* Although defendant and the report relied on the Jentes email, the report explained that the record as a whole showed that "Orr's preferred accommodations required other employees to take on the essential functions of his job." Doc. 32 at 22. That is "an undue hardship in and of itself." *Id.* (quoting *Pegues v. Miss. State Veterans Home*, 736 F. App'x 473, 477 (5th Cir. 2018) (per curiam)

(unpublished)). Plaintiff does not show that the report erred in those findings. His third objection is overruled.

### IV. Objection No. 4

Plaintiff's fourth objection is that the evidence in the record as a whole shows a triable issue of fact as to whether his termination was pretextual. Doc. 36 at 6–7. The report, however, explains that plaintiff's response brief argues a failure-to-promote claim, which he did not raise in his complaint and cannot raise for the first time in response to a motion for summary judgment. Doc. 32 at 23–24. Moreover, the report noted that plaintiff failed to even address his ADA retaliation claim in his response brief. *Id.* at 24. Thus, whether because plaintiff abandoned that claim or because he failed to point to summary judgment evidence in support of that claim, the report concluded that defendant is entitled to summary judgment on plaintiff's ADA retaliation claim. *Id.* Plaintiff's objection does not address this analysis and is therefore overruled.

### V. Objection No. 5

Plaintiff's fifth objection is that the report improperly dismissed damages. Doc. 36 at 7–8. His objection ignores that the report did not address whether he is entitled to damages because defendant established that it is entitled to summary judgment on all of plaintiff's claims and defendant's defenses. Doc. 32 at 31–32. And insofar as plaintiff suggests that the termination is "independently actionable" because it deprived plaintiff of an income, plaintiff cites no statutes or caselaw supporting such a proposition. *See* Doc. 36 at 7–8. He also did not bring such a claim in his complaint. Doc. 1 at 5–8. Plaintiff's fifth objection is therefore overruled.

### VI. Conclusion

Having reviewed the objected-to portions of the report de novo and being satisfied that there is no error, the court overrules plaintiff's objections and accepts the report's findings and recommendations. Defendant's motion for summary judgment (Doc. 20) is granted except as to defendant's request for summary judgment on damages. *See Wilson v. Birnberg*, 667 F.3d 591, 596 (5th

Cir. 2012) (explaining that when "claims fail on the merits, there can be no damages."). This action is dismissed with prejudice. Any pending motions are denied as moot.

*So ordered by the court on March 4, 2026.*

J. CAMPBELL BARKER
United States District Judge